**UNITED STATES of America,
Appellant,**

v.

**George KOSKOTAS,
Defendant–Appellee.**

**No. 629, Docket 88–1382.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 6, 1989.

Decided Oct. 27, 1989.

---

S.D. New York, David W. Denton, Associate U.S. Atty., on the brief), for appellant.

Ronald S. Liebman, Washington D.C. (Mitchell R. Berger, Charles E. Talisman, Eli Gottesdiener, Patton, Boggs & Blow, Washington D.C., Kenneth I. Schacter, Solin & Breindel, New York City, on the brief), for defendant-appellee.

Before KEARSE, WINTER, Circuit Judges, and LEVAL, District Judge.*

PER CURIAM:

The Government appeals from an order of the U.S. District Court, Southern District of New York, Kevin T. Duffy, J., dismissing an indictment on motion of the defendant George Koskotas for violation of his Sixth Amendment right to a speedy trial. 695 F.Supp. 96.

Indictment 80 Cr. 410 was filed July 16, 1980. The indictment charges George Koskotas, his brother Steve Koskotas, Steve's wife Luz Helena Koskotas and George Katsioufis with sixty-five counts of conspiracy, federal tax fraud, false statements to the Social Security Administration, and mail fraud through a scheme to obtain unemployment insurance benefits for fictitious persons from the New York State Department of Labor.

The indictment was filed under seal and bench warrants were issued for all four defendants.

The Government then attempted without success to execute the arrest warrants. Special Agent John Wilkinson of the Internal Revenue Service contacted relatives of the defendants, interviewed persons who had business contacts with them and sought out store owners who had cashed fraudulently obtained checks for defendants. Wilkinson found no leads as to the defendants' whereabouts except advice to the effect that the defendants (who were Greek) were believed to have returned to Greece.

Howard M. Shapiro, Asst. U.S. Atty., New York City, (Benito Romano, U.S. Atty.

* Honorable Pierre N. Leval, Judge of the United States District Court for the Southern District of New York, sitting by designation.

Wilkinson then advised the U.S. Immigration and Naturalization Service of the arrest warrants and asked the defendants' names be placed in the INS' "Lookout List" so that they would be arrested upon any attempt to enter the United States. An Assistant United States Attorney asked that their names be flagged in the INS records so that the authorities would be alerted upon any attempt by a defendant to contact INS.

The names of the defendants were also registered with the FBI's National Crime Information Center's computer list of wanted persons and with the Treasury Enforcement Communications System. Wilkinson also arranged for the dissemination of wanted circulars among various law enforcement agencies. After completing this course of action, Wilkinson ceased to pursue any further active search. None of these actions resulted in any leads as to the whereabouts of any of the defendants until October 8, 1987, more than seven years later.

It now appears that the defendants had indeed left the United States and returned to Greece. Appellee George Koskotas went to work for the Bank of Crete in Athens. Eventually he became an officer of the bank and finally in 1984, its chairman and majority shareholder. As chairman of a major bank, he became prominent in financial and political circles. He also became a newspaper publisher and a well-known public figure. Koskotas, who was apparently unaware of these charges under seal, made numerous trips to the United States, traveling openly under his own name. None of the alerts placed by Agent Wilkinson with the INS or other investigative agency files was triggered. Koskotas repeatedly entered and left the United States without being stopped or questioned.

In October 1987, Koskotas was in the United States and expected as a guest at an official United States Government function to be hosted by then Vice President George Bush. A routine Secret Service screening of the guest list revealed the outstanding warrant. Koskotas was arrested and arraigned.

Government agents then began to assemble the long-dormant prosecution files. Many of the files retained by the New York State Department of Labor ("NYSDOL") could not be found. It appears that, instead of being segregated, they had been mistakenly lodged among the ordinary files and had been routinely destroyed in June 1987 through operation of NYSDOL's regular practice of destroying seven-year old documents.

Koskotas then moved on December 3, 1987 for dismissal of the indictment on the ground that the delay of more than seven years violated his Sixth Amendment right to a speedy trial. He claimed that the loss of the NYSDOL records, together with the erosion of memory of potential witnesses, prejudiced his ability to mount his defense.

Judge Duffy applied the four-factor test of *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), considering "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Judge Duffy found that, although the government could have done more to locate Koskotas, its efforts did not "lack due diligence." Similarly, Koskotas could not be faulted for failing to assert his right to a speedy trial because he was unaware of the outstanding indictment. Judge Duffy found that the first three factors did not favor either side. He then granted the motion without a hearing, finding that "[t]he fourth factor, prejudice to Koskotas from the delay, is the controlling weight in the balance in this case." The judge wrote,

[A] file, representing the NYSDOL investigative efforts in this case, has been destroyed. Such a loss of documents creates an insurmountable prejudice to the [defendant] Koskotas. It has, in effect, deprived him of potentially favorable evidence, the value of which can never be known.

The government argues that [the] destroyed documents [were not significant to the defense].... [T]his argument cannot be supported when an index or

summary ... does not exist. The presumption of innocence requires that I credit the possibility that there was exculpatory evidence contained among the destroyed documents.

The Government moved for reconsideration. Judge Duffy denied the motion, stating,

[The Government's position] would give the prosecution *carte blanche* to destroy all § 3500 material (or even *Brady* material) and then come in with an affidavit saying that the material would not be of help to the defendant....

Having chosen to destroy the material the government has no claim that justice is ill served by [the dismissal].

\*   \*   \*   \*   \*   \*

We do not agree with the standard by which Judge Duffy reached his finding of prejudice or the judge's reasons for denial of the motion for reconsideration.

■ 1. It was not appropriate to presume that the lost material included exculpatory evidence favorable to the defendant. A mere "possibility of prejudice is not sufficient" to tilt the fourth *Wingo* factor in the defendant's favor. *United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986). *See Rayborn v. Scully,* 858 F.2d 84, 94 (2d Cir. 1988), *cert. denied,* — U.S. —, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989); *See also United States v. Schwartz,* 464 F.2d 499, 503–504 (2d Cir.1972), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972); *United States v. Mitchell,* 769 F.2d 1544, 1547–11 (11th Cir.1985), *cert. denied,* 474 U.S. 1066, 106 S.Ct. 819, 88 L.Ed.2d 792 (1986).

■ We do not agree with the district judge's assertion that the presumption of innocence requires such an assumption. The function of the presumption of innocence in the administration of criminal justice is to place the burden on the prosecu-

tion to prove the defendant's guilt at trial. It has no bearing on pretrial issues, such as the grant or denial of bail. *See generally Bell v. Wolfish,* 441 U.S. 520, 533, 99 S.Ct. 1861, 1870, 60 L.Ed.2d 447 (1979). Nor does it apply to a motion of this nature.

During periods of delay, even brief delay, evidence can be lost—sometimes without fault on the part of the prosecutor. Documents may be lost; potential witnesses may die, move away, or lose their memory of important events. When such a loss occurs there is no basis either in logic or precedent for assuming that the lost evidence would necessarily have been exculpatory.

On the present state of the record, there is little reason to believe that the loss of the NYSDOL files in fact prejudiced the defense. The Government submitted an affidavit of NYSDOL Senior Investigator John McGuire who had participated in the investigation and was familiar with the files. According to McGuire, the lost files consisted of copies of items in the possession of the United States Attorney, copies of forms that were mailed to the defendants, and notes and reports that are summarized in extant affidavits and reports. McGuire states that he is aware of no exculpatory information, either in the destroyed files, or elsewhere.[1]

■ 2. We do not think the judge's observations on the motion for reconsideration were pertinent to these facts. Those remarks seemed to imply that the Government acted intentionally and in bad faith in destroying the files. We have found no such suggestion in the present record. Indeed, so far as appears from the affidavits submitted, it was not even the Government that lost the files. It appears they were destroyed by the New York State Department of Labor in the good faith execution of a routinely applied seven-year policy of file disposal. Accordingly there is no rea-

---

**1.** The Government's affidavits further suggest that the lost records may have no relevance whatever to certain of the counts of the indictment. It contends that the income tax refund and social security aspects of the indictment arose from separate investigations and do not include the same facts or evidence. If it is true, as the Government argues, that the loss of files did not prejudice the defense of other counts, there was no reason to dismiss them, notwithstanding any prejudice that might require dismissal of NYSDOL fraud counts.

son in the present record to invoke dismissal as a sanction on the Government. *See United States v. Grammatikos*, 633 F.2d 1013, 1019–22 (2d Cir.1980).

\* \* \* \* \* \*

 We conclude the matter must be remanded for a hearing on the likelihood of prejudice, as well as any other disputed issues arising under the test of *Barker v. Wingo*.

The question will arise at the hearing what kind of a showing the defendant must make as to the likelihood of prejudice in order to prevail on its motion.

There is no firm standard applicable to all cases. Each of the four *Wingo* factors varies in relation to the others. "We regard none of the four factors identified above as either a necessary or sufficient condition.... They are related factors and must be considered together...." *Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193. Thus in a case in which other factors firmly favor the government, i.e., relatively short delay, faultless conduct by the government, and absence of effort by the defendant to push his case to an earlier trial despite the opportunity to do so, the defendant would be obliged to make a powerful showing as to both the likelihood and severity of prejudice.

On the other hand, the more the other factors favored the defendant, the less would be required of him. Thus, at the other extreme, if the delay were egregious, the defendant had made efforts to secure a prompt trial and the government had delayed trial through negligence or laziness, exhibiting disregard for defendant's rights, a far lesser showing would be required. Indeed, on sufficiently egregious facts, it is questionable whether the defendant need make any showing of prejudice in view of the Supreme Court's assertion that "none of the four factors ... [is] a necessary ... condition." *Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193.

In this case, on the basis of the pre-hearing record before him, the district judge found little basis for faulting the government. If this appraisal continues unchanged after a hearing, the defendant would be obliged to make a substantial showing of likelihood of prejudice in order to prevail.

The decision of the district court is vacated and the case is remanded for further proceedings.