UNITED STATES of America,

v.

Frank MORENO, Defendant.

No. 1:11–CR–246–DNH–1.

United States District Court,
N.D. New York.

Signed April 15, 2014.

Hinckley, Allen Law Firm, Samuel C. Breslin, Esq., of Counsel, Albany, NY, for Defendant.

Richard S. Hartunian, Robert A. Sharpe, Esq., Ass't United States Attorney, of Counsel, Albany, NY, United States Attorney for the Northern District of New York.

## DECISION and ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

A period of nearly twenty-eight months elapsed between defendant Frank Moreno's ("Moreno" or "defendant") indictment in the Northern District of New York and his coincidental arrest during a routine traffic stop in New York City. During a December 13, 2013, detention hearing following Moreno's transfer to federal custody, defendant's counsel asserted his client's Sixth Amendment right to a speedy trial and indicated his intent to move against the indictment on that basis.

On January 10, 2014, Moreno made his speedy trial motion. Although an opposition to that motion was due by January 24, 2014, the United States of America (the "Government") requested, and was granted, an extension of time until January 28, 2014, to respond. Oral argument on Moreno's speedy trial claim was eventually heard on Friday, February 7, 2014, in Utica, New York.[1]

On February 19, 2014, this Court granted Moreno's motion to dismiss the indictment against him (the "February 19 Decision" or "Decision"). *United States v. Moreno*, 997 F.Supp.2d 165, 2014 WL 630701 (N.D.N.Y. Feb. 19, 2014).

---

**1.** Thus, the Government had almost two months between the time it was first notified that defendant intended to assert his speedy trial rights and oral argument, and four weeks between when the motion was finally made and oral argument.

The Government now moves for reconsideration pursuant to Local Rule 7.1(g). The defendant opposes. The motion was considered on its submissions without oral argument.

## II. *DISCUSSION*

The Government contends the February 19 Decision: (1) improperly resolved factual disputes; (2) incorrectly determined the delay was "uncommonly long;" and (3) erroneously concluded Moreno had shown "sufficient" prejudice.

 The standard for granting a motion for reconsideration pursuant to the Federal Rules of Civil Procedure[2] is "strict." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). A motion for reconsideration is neither a vehicle for securing a rehearing on the merits nor an opportunity to assert arguments that could and should have been made before the contested decision was issued. *See id.* Rather, it is an "extraordinary remedy to be employed sparingly in the interest of finality and conservation of scare judicial resources," and will generally be denied unless "the moving party can point to controlling decisions or data that the court overlooked, and which the movant could reasonably believe would have altered the court's original decision." *Montblanc– Simplo GmbH v. Colibri Corp.,* 739 F.Supp.2d 143, 147 (E.D.N.Y.2010) (citations omitted).

 Accordingly, a previous ruling will only be reconsidered and vacated if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky,* 899 F.Supp. 923, 925 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Doe v. N.Y.C. Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir.1983), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983)).

### 1. *Evidentiary Hearing*

 The Government first contends the February 19 Decision resolved factual disputes in the record and "credited defense assertions of facts" without the benefit of an evidentiary hearing. Gov. Mem. 2.

First, it must be noted that the Government submitted *no* affidavits in opposition to Moreno's motion and its supporting affidavits. This is in direct contrast to the affidavits the Government has submitted in support of this motion, which reflect investigation largely made *after* the February 19 Decision was released. These could easily have been completed and filed prior to oral argument.

 The February 19 Decision contained two important findings: (1) there was no evidence Moreno had actively evaded law enforcement; and (2) the Government was negligent in its pursuit of Moreno. The Government devotes a great deal of space to recounting evidence it submitted in its original opposition to Moreno's speedy trial claim which it believes was "rejected" in favor of Moreno's submis-

---

**2.** Neither the Federal Rules of Criminal Procedure nor the Local Rules of Practice for Criminal Cases expressly provide for reconsideration motions. However, such motions in the criminal context have historically been allowed within the Second Circuit as a "traditional and virtually unquestioned practice." *United States v. Clark,* 984 F.2d 31, 33 (2d Cir.1993) (quoting *United States v. Dieter,* 429

U.S. 6, 8 n. 3, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976)). Where, as here, "the Rules of Criminal Procedure do not speak specifically to a matter, a court conducting a criminal case is permitted to draw from and mirror a practice that is sanctioned by the Federal Rules of Civil Procedure." *United States v. Morrison,* 521 F.Supp.2d 246, 251–52 (S.D.N.Y.2007) (citation omitted).

sions. Gov. Mem. 2–4. In light of this evidence, the Government argues, "it was not unreasonable for law enforcement to have not done more investigation regarding 40 Morrow Ave." Gov. Mem. 4. But the Government's contention that it is now necessary to determine "whether and when" Moreno lived at 40 Morrow Ave. misapprehends the Decision's analysis. Contrary to the Government's mistaken understanding, the Decision's thorough discussion regarding 40 Morrow Ave. was an act of sorting the wheat from the chaff—the Government submitted a number of exhibits memorializing events that occurred both pre- and post-indictment and this evidence needed to be organized into discrete time periods to facilitate a proper examination for speedy trial purposes.[3]

The February 19 Decision found that because there was a "lack of any evidence to suggest that Moreno had adopted an alias or was otherwise a fugitive," he was not "actively evading" law enforcement. Decision, 997 F.Supp.2d at 173–75. There is certainly no question that the Government submitted evidence to support its claim that the FBI's arrest team made efforts to locate Moreno immediately following his indictment by investigating 719 Beck Street and speaking with "informants," and the Decision properly credits the Government for its efforts in this post-indictment period.

The Government asserts that a factual dispute existed regarding Teresa Moreno's affidavit because its counsel represented that the DEA had visited 40 Morrow Ave. at some point in 2010, well before Moreno's challenged indictment was even issued. This argument simply misses the mark. Even though the Government

failed to provide any conflicting affidavits from investigative sources or other statements made on personal knowledge, the February 19 Decision included a thorough examination of all of the evidence the Government did choose to submit before reaching its conclusion that the assertions in Teresa Moreno's affidavit stood uncontested. Indeed, the Decision properly noted that "[a]lthough the Government indicated at oral argument that it did not find Teresa Moreno's affidavit 'particularly credible,' it has not provided any evidence to challenge its veracity." Decision, 997 F.Supp.2d at 174.

The February 19 Decision also found that because the Government "provided no evidence of any efforts taken between September 6, 2012, and September 9, 2013," it was negligent in its pursuit of Moreno. Although the Government obviously disputes "whether and when" Moreno lived at 40 Morrow Ave., the Decision's finding of negligence was not based on an "unfavorable" resolution of that peripheral issue. Rather, it was based on the Government's failure to proffer any evidence of due diligence in the one-year period prior to defendant's arrest by the N.Y.P.D. The basis for this finding is underscored by other elements of the Decision with which the Government now takes issue.

For example, the Government identifies two "representations" it apparently believes the February 19 Decision did not credit: (1) an FBI "follow-up" to locate utility bills in Moreno's name in connection with a June 14, 2012, proffer session; and (2) an FBI "follow-up" on information received from the DEA regarding a cellular telephone number of one of Moreno's alleged associates. Gov. Mem. 6. While the

---

**3.** The right to a speedy trial attaches upon a defendant's "arrest, indictment, or other official accusation." *Doggett v. United States,* 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

Decision was absolutely correct to note that the Government "has not provided any evidentiary support for [these] contentions"—contentions made by Government's counsel at oral argument but unsupported by affidavits from FBI agents or other evidence it had chosen to submit in opposition—the Government's claim that the Decision did not credit these assertions is simply wrong. Decision, 997 F.Supp.2d at 171, 177.

These "follow-ups" were credited to the extent that the timing of these efforts was submitted as evidence of the Government's ongoing diligence at that time. The Con Edison "follow-up" is credited as part of the Government's efforts between Moreno's indictment and September 6, 2012, as evidenced by the February 19 Decision's finding that the Government had exercised some limited diligence during that period. Likewise, the DEA "follow-up" is credited as the last date the Government provided evidence of any timing related to its efforts. In the absence of any dated evidence beyond September 6, 2012, the Government apparently believes that its proffer of evidence for the first one-year period following Moreno's indictment—between its unsealing on May 26, 2011, and the Government's final evidentiary submission dated September 6, 2012—was somehow sufficient to discharge its ongoing obligation to pursue the defendant during the second one-year period before his arrest. *Doggett*, 505 U.S. at 656, 112 S.Ct. 2686 ("[I]f the Government had pursued [the defendant] with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail."). But as the Decision made clear,

"[r]easonable diligence demands serious efforts." Decision, 997 F.Supp.2d at 178.

Importantly, the February 19 Decision determined that "[e]ven assuming the Government's failure to investigate 40 Morrow Ave. was justified .... [t]he Government has provided no evidence of any efforts taken between September 6, 2012, and September 9, 2013." Decision, 997 F.Supp.2d at 178. In other words, even crediting every single assertion made in opposition, the Government had still failed to produce any evidence from September 6, 2012, to September 9, 2013. The Decision divided the Government's post-indictment efforts into distinct time periods because it is this final period—the lack of evidence regarding any ongoing efforts—that militated strongly in favor of a finding of negligence.

The Government also suggests that it "provided additional details not included in the Court's Order" regarding information received from the DEA. Gov. Mem. 4 n. 2. Specifically, the Government argues the February 19 Decision failed to note that Moreno was living with "Fluffy" in the "middle projects" and that it had received "Fluffy's" cellular telephone number as part of this DEA communication. Yet the Decision clearly states that among the information that the FBI received from the DEA on September 6, 2012, was "the telephone number of one of Moreno's alleged criminal associates." Decision, 997 F.Supp.2d at 171. The Government's contention that the Decision was somehow deficient by virtue of failing to identify "Fluffy" by name is an attempt to find fault where none exists.

Finally, the Government makes a number of assertions regarding evidence that "could have" been presented.[4] Gov. Mem.

---

4. It is noted that the Government has now provided documentary evidence of the "Trap and Trace Order" it secured on "Fluffy's"

cellular telephone number on November 13, 2012, to determine calls that were made between May 29, 2011, and August 1, 2012.

6. For instance, it submits—for the first time ever in this case—affidavits from FBI agents and other investigative sources. It also submits documents in a further attempt to create a factual dispute regarding "whether and when" Moreno lived at 40 Morrow Ave. But these new submissions largely reiterate claims already considered in the Decision or challenge assertions made by Moreno in his original moving papers—assertions to which the Government had ample time to respond appropriately.

In fact, the Government had already been granted—over an objection by Moreno's counsel—an extension of time to respond to defendant's speedy trial motion. ECF Nos. 341, 343. In its request for an extension of time to respond, the Government represented it had "met with agents in the Albany FBI field office and [had] spoken with agents from the New York field office both last week and this week." The Government indicated that although it had "been provided with various documents from the case agents," it was "waiting on additional documents" which had not yet been received, and it would "be including this documentation with [its] response in opposition." Notably, this letter also represented that "[i]t may be that the Court can resolve the issue(s) on the basis of the written submissions and oral argument but we leave to the Court's judgment if it feels an evidentiary hearing is needed."

The Government then failed to submit its opposition by the newly extended deadline, prompting Moreno's counsel to request the motion be treated as uncontested due to the Government's tardy response. ECF No. 346. Nevertheless, oral argument was heard on the motion and *all* of the Government's submissions were considered.[5] Among such submissions was its memorandum of law, which indicated that "[s]hould the Court direct that an evidentiary hearing is necessary to resolve these issues in addition to the written submissions of the parties and oral argument, the [G]overnment intends to call witnesses to support and substantiate the information set forth herein." ECF No. 347, 13.

This series of equivocations cannot plausibly be construed as a request for an evidentiary hearing—formal or otherwise. Nor did the Government ever make any indication—in either its written submissions or during oral argument—that the initial extension of time it had been granted was insufficient or that it required additional time to secure further information from investigative sources or even that, if given an opportunity, it could present additional evidence in opposition to Moreno's claim. Both parties clearly elected to proceed on the basis of their submissions and it is entirely unclear how the Government could reasonably expect the Decision would not make *any* findings in resolving defendant's claim. Accordingly, the Government's motion for reconsideration on this basis will be denied.

### 2. *Complexity*

 The Government next contends the February 19 Decision "improperly relied" on the "mistaken conclusion" that More-

---

Gov. Exs. A, A–1, A–2. But as discussed below, the Government provided no indication that such information was available or forthcoming in its opposition. In any event, this one isolated act, occurring almost ten months prior to the date of defendant's arrest and standing as the only evidence of any diligence in the second one-year period prior to defen-

dant's arrest, would not change the negligence finding.

5. Including sealed exhibit 15, submitted by the Government and provided to Moreno's counsel for the first time just moments prior to oral argument.

no's case was not "complex" in determining the delay was "uncommonly long" because "the complexity of the case factor is relevant only to post-arrest delays." Gov. Mem. 7–8.

This contention is plainly without merit. The February 19 Decision began from the general principle that "there is no clear definition of an 'uncommonly long' delay." Decision, 997 F.Supp.2d at 173. After recognizing that "the *Barker* analysis is necessarily a contextual one," it noted that "courts have looked to several factors in determining whether the delay at issue was 'uncommonly long.'" Decision, 997 F.Supp.2d at 173. It then explored several cases in detail, including *United States v. Cain*, the basis of the Government's argument on this point. In *Cain*, the Second Circuit analyzed the length of delay in a speedy trial claim in light of a number of factors, including the complexity of the case at issue, before explicitly concluding that the first *Barker* factor was "largely neutral" given the nature of the case. *United States v. Cain*, 671 F.3d 271, 296 (2d Cir.2012).

Even assuming arguendo the Government's contention is accurate—the complexity of the case is "plainly relevant only to post-arrest delays"—the Second Circuit's decision in *Cain* was merely one case among many discussed and considered in the February 19 Decision as part of the contextual analysis that *Barker* commands. Accordingly, the Government's motion for reconsideration on this basis will be denied.

### 3. *Prejudice*

The Government finally contends the February 19 Decision "improperly conclud-

ed" Moreno had shown "sufficient prejudice." Gov. Mem. 8–9.

This contention is similarly without merit. The Government's argument starts from an accurate legal proposition: the mere possibility of prejudice will not tilt the fourth *Barker* factor in a defendant's favor. *See* Gov. Mem. 9 (citing *United States v. Koskotas*, 888 F.2d 254, 257 (2d Cir.1989)). However, the Government then ignores the rest of the Decision's analysis as well as its own cited case law to argue "there was no showing of negligence" and that "[u]nder these circumstances, a substantial showing of prejudice was required." Gov. Mem. 10.

What the Government fails to recognize (or perhaps understand) is the February 19 Decision did not rely on the unsupported assertions of Moreno's counsel in analyzing the fourth *Barker* factor. Rather, the Decision noted that a presumption of prejudice arises where there are "prolonged and unjustifiable delays ... in prosecution." Decision, 997 F.Supp.2d at 180. Because "the strength of this presumption is "intertwined with the reason for, and length of, the delay,'" the Decision analyzed this presumption in light of the other *Barker* factors. Decision, 997 F.Supp.2d at 180. The block quotation from *Koskotas* given in the Government's own papers immediately preceding this argument makes it clear that "[t]here is no firm standard applicable to all [speedy trial claims]" and acknowledges that "the more the other factors favor[ ] the defendant, the *less would be required of him.*" Gov. Mem. 9 (quoting *Koskotas*, 888 F.2d at 257) (emphasis added).[6]

 The Government's renewed contention that Moreno was required to show

---

**6.** It is noted that not one, not two, but *all* three of the other *Barker* factors weighed

against the Government.

"specific" or "substantial" prejudice to prevail on his speedy trial claim misstates the law. "[P]rejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686 (citations omitted). And "[w]hile this presumption alone cannot carry a Sixth Amendment claim, 'it is part of the mix of relevant facts, and its importance increases with the length of delay.'" Decision, 997 F.Supp.2d at 180. Accordingly, the Government's motion for reconsideration on this basis will be denied.

## IV. *CONCLUSION*

After carefully analyzing and weighing all four *Barker* factors, the February 19 Decision concluded the Government had violated Moreno's Sixth Amendment right to a speedy trial. The Government has failed to demonstrate an intervening change in controlling law, new evidence not previously available, or clear error of law. Nor is there any manifest injustice in requiring the government to prosecute its caseload with reasonable diligence. In any event, the "new" evidence presented by the Government at this late date does not touch and would not change the basis of the February 19 Decision.

 "A party seeking reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *Davidson v. Scully*, 172 F.Supp.2d 458, 461 (S.D.N.Y.2001) (citation and internal quotation marks omitted). While the Government clearly did not expect to lose the motion, such a reality is neither a sufficient justification for failing to properly oppose it the first time around

nor a basis for granting reconsideration now.

Therefore, it is

ORDERED that

The Government's motion for reconsideration is DENIED.

IT IS SO ORDERED.