United States v. Sterling

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of March, two thousand and nineteen.

Present:
> JOHN M. WALKER, JR.,
> PIERRE N. LEVAL,
> PETER W. HALL.
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

v.

LEONARD STERLING, ROSHANE HENRY,

> *Defendants,*

KEVIN STERLING, ALONZO VERNON,

> *Defendants-Appellants.*

17-2253-cr (L);
17-2324-cr (Con)

---

| | |
|---|---|
| *For Appellee*: | DREW SKINNER (Justina L. Geraci, Won S. Shin on the brief) Assistant United States Attorneys, *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York. |

| *For Appellant Sterling*: | ROGER L. STAVIS (Adam M. Felsenstein, Rebecca B. Pasternak on the brief), GALLET DREYER & BERKEY, LLP, New York, NY |
|---|---|
| *For Appellant Vernon*: | RACHAEL REESE, (Mark O'Brien on the brief), O'Brien Hatfield, P.A., Tampa, FL |

Appeal from judgments entered July 20, 2017 in the United States District Court for the Southern District of New York (Kaplan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgments are **AFFIRMED**.

A jury convicted Alonzo Vernon and Kevin Sterling of (1) participating in a narcotics distribution conspiracy; (2) using, carrying, possessing, brandishing, and discharging firearms during and in relation to the narcotics distribution conspiracy; and (3) possessing ammunition after having been convicted of a felony. Sterling and Vernon appeal these convictions. We assume the parties' familiarity with the underlying facts, the procedural history, and the arguments presented on appeal, which we reference only to explain our decision.

**A. The Motion to Suppress Sterling's Post-Arrest Statement**

Sterling challenges the district court's denial of his motion to suppress a post-arrest statement in the form of a question to the U.S. Marshal's investigator Jenkins asking, "Who gave me up?" App. 59. We affirm the district court's denial of the motion to suppress. In so doing, we review legal issues *de novo* and factual findings for clear error, viewing the evidence in the light most favorable to the government. *United States v. Yousef*, 327 F.3d 56, 124 (2d Cir. 2003).

2

There is no dispute that Sterling was in custody when he asked the question he seeks to suppress and that he had not been fully advised of his *Miranda* rights. The issue we must decide is whether Sterling's question was elicited as the result of interrogation by law enforcement. It was not. Interrogation occurs when a suspect is subjected to "either express questioning or its functional equivalent," which includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980).

We focus on the perceptions of the suspect, not on the intent of law enforcement officers, when assessing whether those officers should have known that their actions were reasonably likely to elicit an incriminating response. *Id.* at 301. In doing so, we consider the "totality of the circumstances." *Acosta v. Artuz*, 575 F.3d 177, 191 (2d Cir. 2009). Nothing in this record supports the conclusion that Jenkins should have known that asking Sterling, "Do you have any questions?" would elicit an incriminating statement from Sterling, especially because Jenkins had told Sterling that he was "not going to ask [Sterling] any questions about [his] case." App. 59.

Moreover, whether or not Sterling's statement should have been suppressed, its admission was harmless. "[A]dmission of statements obtained in violation of [*Miranda*] may be deemed harmless [] if it appears beyond a reasonable doubt that the error . . . did not contribute to the verdict obtained." *United States v. Newton*, 369 F.3d 659, 679 (2d Cir. 2004). The government proved Sterling's guilt overwhelmingly, without reference to his self-incriminating question.

3

## B. Vernon's Sixth Amendment Right to a Speedy Trial

Vernon asserts that delaying his trial for eight months and fifteen days following indictment violated his Sixth Amendment right to a speedy trial. We disagree. Vernon failed to move to dismiss the indictment on speedy trial grounds in the trial court. We therefore review his speedy trial claim for plain error. *United States v. Olano*, 507 U.S. 725, 731–37 (1993); *United States v. Abad*, 514 F.3d 271, 274 (2d Cir. 2008) (per curiam). There was no error, much less plain error.

We consider four factors when evaluating a potential constitutional violation of a defendant's speedy trial right: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *United States v. Moreno*, 789 F.3d 72, 78 (2d Cir. 2015) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

As to the first factor—the length of the delay—Vernon argues that eight months and fifteen days following indictment in this case was an "uncommonly long" delay. Appellant's Br. (Vernon) 47. He bases his argument on a law review article[1] cited in *United States v. Vassell*, 970 F.2d 1162 (2d Cir. 1992), which suggests that an eight-month delay is presumptively prejudicial and should trigger a further *Barker* inquiry. This court, however, while citing the article, did not discuss whether it agreed with the article that such a delay would be presumptively prejudicial. We certainly did not hold to that effect. *Id.* at 1164. However, even assuming arguendo

---

[1] Gregory P.N. Joseph, *Speedy Trial Rights in Application*, 48 Fordham L.Rev. 611, 623 n.71 (1980).

4

that a delay of eight months is presumptively prejudicial, the other *Barker* factors require rejection of Vernon's argument.

The second factor—the reason for the delay—does not favor Vernon. In July 2016, the district court set a trial date for February 2017 in Vernon's case. Vernon waited almost three months, until October 2016, to request that an earlier trial date be set. After co-defendant Sterling was arrested in January 2017, the district court moved the trial again from February to April 2017, so the government could try Vernon and Sterling together. Those modifications to the schedule were reasonable under the circumstances. *See United States v. Lasker*, 481 F.2d 229, 237 (2d Cir. 1973) (concluding that a delay was "mitigated" when it was caused by "the government's desire to secure the presence of [a co-defendant] and to try him jointly with each of his alleged co-conspirators.").

As to the third factor, Vernon waited almost three months to object to the trial date the court had set, at which point the court had no earlier trial dates available. He objected again after Sterling's arrest, but he never moved to sever the trials, nor did he join Sterling's severance motion.

The fourth factor—prejudice from the delay—also weighs against Vernon. Vernon asserts that during pretrial incarceration, he was unable to obtain medical care for his unidentified mental illness, and therefore isolated himself, and was "victimized" (without specification) by prison staff. Vernon's difficulties during pretrial incarceration do not approach the seriousness of prejudice suffered by defendants in cases where we have found a speedy-trial violation. *See, e.g., United*

5

*States v. Tigano*, 880 F.3d 602, 616–17 (2d Cir. 2018) (concluding defendant prejudiced when defense counsel requested delays to convince defendant to accept a guilty plea due to discomfort with defendant's trial strategy); *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 379 (2d Cir. 1979) (explaining defendant prejudiced when witnesses crucial to defense could no longer be located and other witnesses who previously agreed to testify later refused to do so). While we have said that anxiety and concern can qualify as a prejudice resulting from pretrial delay, *Moreno*, 789 F.3d at 81, the extent and seriousness of anxiety and concern would need to be considerably more aggravated to tip this factor in Vernon's favor.

We cannot conclude on the record before us that Vernon's Sixth Amendment right to a speedy trial was violated by the district court's scheduling of Vernon's trial date.

**C. The Exclusion of Defendants' Proffered Expert Testimony**

Both Vernon and Sterling argue that the district court improperly excluded the testimony of psychiatrist Dr. Houghtalen. We review for abuse of discretion a district court's exclusion of expert testimony. *Zuchowitz v. United States*, 140 F.3d 381, 386 (2d Cir. 1990). Roshane Henry was a cooperating co-conspirator who testified about the drug conspiracy. During his testimony, he revealed that he has been diagnosed with schizoaffective disorder and severe intellectual deficits but that he could discern real from fake. Sterling and Vernon sought to call Dr. Houghtalen to provide expert testimony to challenge Henry's reliability as a witness. Dr. Houghtalen would have testified that schizoaffective disorder can affect an individual's ability to distinguish

between the real and the imaginary, thus providing the jury with credible information about Henry's mental state that it could not get from Henry.

The district court precluded Dr. Houghtalen from testifying on the grounds that his testimony was cumulative (in relation to Henry's own testimony), unhelpful (because the doctor could not opine on Henry's ability to perceive reality accurately during the time the drug conspiracy was operating), and an intrusion on the jury's role of assessing witnesses' credibility. The district court's rationale, however, misunderstands the purpose for which Dr. Houghtalen's testimony would have indeed been relevant to the defense. Specifically, Dr. Houghtalen's inability to reach a professional opinion one way or the other as to Henry's ability to appreciate what was not real during the course of the conspiracy bolstered the defense's argument that Henry, who suffered from schizoaffective disorder and severe intellectual deficits, could well have been imagining the events about which he had testified. Although Henry professed that he was sure he was testifying about events that had actually occurred, Dr. Houghtalen's testimony would have been a basis for the jury to be persuaded otherwise. We agree with appellants that Dr. Houghtalen's testimony should not have been excluded. That said, however, we determine that the error was harmless beyond a reasonable doubt. *See United States v. Mejia*, 545 F.3d 179, 200-02 (2d Cir. 2008) (holding "vacatur is required unless we are convinced that the error was harmless beyond a reasonable doubt." (internal citations omitted)).

Even assuming that, with the benefit of Dr. Houghtalen's testimony, the jury might have been unwilling to rely on Henry's evidence, we nonetheless conclude that

7

its erroneous exclusion did not affect the verdict. Because Cosme participated in the drug conspiracy for a longer period than Henry and actually witnessed the shooting, Cosme's testimony, more than Henry's, directly linked the defendants to the conspiracy. In addition, other witnesses, cell-phone records, and recovered narcotics significantly corroborated Cosme's testimony about the conspiracy and the defendants' involvement in it.

* * *

We have considered the defendants' remaining arguments, and find them to be without merit.

The judgments are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8