14-1591-cv
*Abascal v. Fleckenstein, et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued:  January 6, 2016     Decided: April 29, 2016)

Docket No. 14-1591-cv

_____

ISIDRO ABASCAL,

*Plaintiff-Appellee,*

- v. -

DENNIS FLECKENSTEIN AND CHESTER KOSMOWSKI,

*Defendants-Appellants,*

WILLIAM KUMP, JAMES T. CONWAY, THOMAS G. EAGEN,

*Defendants.*

_____

Before:     POOLER, HALL, and CARNEY, *Circuit Judges.*

Defendants Dennis Fleckenstein and Chester Kosmowski appeal from a July 15, 2013 judgment of the United States District Court for the Western District of New York (Schroeder, *M.J.*), entered against them pursuant to a jury verdict, and an April 7, 2014 order of the district court denying their motion to set aside the verdict. The jury found that both defendants had violated Isidro Abascal's constitutional right to nutritionally adequate food and awarded Abascal $1 in nominal damages and $150,000 in punitive damages ($75,000 per defendant). At trial, the district court admitted into evidence a report authored by the Correctional Association of New York regarding conditions at the Attica

1

Correctional Facility, where Abascal's alleged abuse took place. The report included statements by other inmates alleging abuse at Attica, as well as the report's authors' views about the pervasive culture of abuse at the facility. On appeal, the defendants argue that the district court's admission of the report constitutes reversible error that warrants a new trial. We hold that the district court abused its discretion when it admitted the report into evidence because it was inadmissible hearsay and did not qualify for the business records or public records exceptions. We vacate the judgment and remand the case to the district court because this error was not harmless.

VACATED and REMANDED.

MARTIN A. HOTVET,
Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, and Frederick A. Brodie, Assistant Solicitor General, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, Albany, NY *for Defendants-Appellants Dennis Fleckenstein and Chester Kosmowski.*

JEFFREY F. BAASE,
Rupp Baase Pfalzgraf Cunningham LLC, Buffalo, NY *for Plaintiff-Appellee Isidro Abasacal.*

HALL, *Circuit Judge*:

I.     BACKGROUND

Plaintiff-Appellee Isidro Abascal was an inmate with the New York State Department of Corrections and Community Supervision from April 1997 to

September 2005. In November 2003, the Department of Corrections transferred Abascal to the Attica Correctional Facility in upstate New York. While at Attica, Abascal alleges, he was prevented from leaving his cell during fourteen mealtimes and during several recreational periods. He also contends that Officer Fleckenstein physically assaulted him. These abuses allegedly were in retaliation for filing grievances against individual corrections officers. The retaliatory abuse occurred between November 2003 and March 2005.

In March 2005—a few weeks after the last alleged incident of abuse— members of the Correctional Association of New York (the "Association") visited the Attica Correctional Facility to conduct research for a prison monitoring report (the "Report"), which was published six months later. The Association is a private, nonprofit corporation that is registered with the New York State Department of State, Division of Corporations. *See* NYS Department of State, Division of Corporations, Entity Information, http://www.dos.ny.gov/corps/bus_entity_search.html (last visited February 29, 2016). The Association describes itself as an "independent non-profit organization that advocates for a more humane and effective criminal justice system." *Correctional Association of New York, "Who We Are,"*

http://www.correctionalassociation.org/about-us/mission-history (last visited

February 29, 2016).

The Report found a "widespread sense of fear and intimidation among

inmates" and that corrections officers at Attica abused inmates by, among other

things, refusing to let inmates out of their cells at mealtimes and physically

assaulting them. Joint App'x at 75, 79. The Report further states that "[i]nmates

said that prisoners who make complaints about abuse or file grievances are

retaliated against by staff and many are too intimidated to even raise allegations

of abuse." *Id.* at 79. Although generally critical of the facility, the Report also

contained positive information about the Attica Correctional Facility including

that many inmates were "generally satisfied with their [mental health] treatment,

and the staff and inmates who work there [were] understanding and sensitive to

the needs of inmates with mental illness." *Id.* at 76.

Members of the Association gathered the underlying information in the

Report by distributing anonymous questionnaires to inmates, interviewing

guards, and observing the facility firsthand. The Report is fourteen pages long

and contains summaries of the information collected by the investigators but

does not contain the underlying data upon which the Report relies. The authors

of the Report—who are nowhere identified—note that "[d]uring [the] visit we could not adequately investigate the amount and severity of the abuse or evaluate the factors that contribute to the problems between inmates and staff." *Id.* at 79.

## II.    PROCEDURAL HISTORY

Abascal, proceeding *pro se*, brought suit under 42 U.S.C. § 1983 alleging, among other things, that while he was incarcerated at Attica Correctional Facility, defendant corrections officers Dennis Fleckenstein and Chester Kosmowski subjected him to cruel and unusual punishment by depriving him of meals and defendant Fleckenstein physically assaulted him in violation of his Eighth Amendment rights. Abascal sought declaratory relief, compensatory damages, and punitive damages.

Before trial, defendants objected to the Report's admission into evidence. The magistrate judge initially admitted the Report under the public records exception to the rule against hearsay. The court mistakenly classified the Association as a state agency of the State of New York. A few days after the decision, the defendants moved for reconsideration on the grounds that the Association was a public advocacy group and not a state actor. In response to

that motion, the district court altered its rationale for admitting the Report and ultimately admitted the Report under the business records exception.

At trial, the jury found that both defendants had violated Abascal's constitutional right to nutritionally adequate food and awarded Abascal $1 in nominal damages and $150,000 in punitive damages ($75,000 per defendant). The jury did not find Fleckenstein liable for use of excessive force. The district court denied defendants' motion for a new trial. On appeal, defendants argue that the district court's admission of the Report constitutes reversible error that warrants a new trial.

## III. DISCUSSION

### a. Standard of Review

We review for abuse of discretion the admission of evidence. *United States v. Ford*, 435 F.3d 204, 214 (2d Cir. 2006). When reviewing a district court's decision to admit evidence, "[e]ither an error of law or a clear error of fact may constitute an abuse of discretion." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224 (2d Cir. 1999) (internal quotation omitted). Even when a district court's evidentiary ruling is erroneous, we will not grant a new trial if the error was harmless. *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010). We begin by

addressing whether the district court erred when it admitted the Report into evidence.

### b. Hearsay

The Federal Rules of Evidence prohibit the admission of hearsay. Fed R. Evid. 802. Hearsay is a "statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The Report is classic hearsay because it was offered for the truth of the matter asserted, and it was not made under oath before the district court. Unless the Report may be admitted under an exception to the rule against hearsay, the district court erred by admitting it.

### c. Business Records Exception

The district court ultimately admitted the Report under an exception commonly referred to as the "Business Records Exception" to the rule against hearsay. Fed. R. Evid. 803(6). A business record may be admitted into evidence even though it is hearsay if: (a) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (b) the record was kept in the course of a regularly conducted activity; (c) making the record was a

regular practice of that activity; (d) the custodian certifies the record; and (e) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6)(a–e). On examination of these factors, we hold that the Report does not satisfy the requirements of the Business Records Exception.

The Report was not "made at or near the time by—or from information transmitted by—someone with knowledge." Fed. R. Evid. 803(6)(a). Timeliness is essential because "any trustworthy habit of making regular business records will ordinarily involve the making of the record *contemporaneously*." *United States v. Strother*, 49 F.3d 869, 876 (2d Cir. 1995) (internal quotation omitted). Association employees visited Attica on March 17, 2005, and the Report was not issued until September 5, 2005. A six month delay is too long a time to be considered a contemporaneous recording. Even assuming, as Abascal argues, that the Report was "made within a reasonable time after the site visit," Joint App'x at 99, there is nothing in the record that suggests the surveys and interviews were conducted at or near the time of the underlying events that make up the information in the Report. In other words, there is no way to verify that the incidents that the inmates recounted to Association employees occurred at or near March 17, 2005.

8

Moreover, the Report was not made by someone with personal knowledge of the underlying information. First, it is unclear from the record who, in fact, authored the Report. The Report was officially authored by the Association itself, and there is no way to verify if the actual author or authors had personal knowledge of the information that was reported. Second, and more importantly, even if the Report was created by an employee of the Association who personally visited Attica, there is no indication that the information gathered in the underlying surveys and interviews was reported by "someone with knowledge." Fed. R. Evid. 803(6)(a). This significant deficiency also implicates similar problems surrounding embedded hearsay, which we briefly address below.

In addition, the making of the Report is not the kind of "regularly conducted activity" contemplated by the business records exception. *See Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 633 (2d Cir. 1994) (affirming lower court's decision not to admit a document under the business records exception because it "required significant selection and interpretation of data, not simply a downloading of information previously computerized in the regular course of business"). The creation of the Report required interpreting survey results and inmate interviews and then creating a summary of the

9

findings. This process is a far cry from the simple act of recording observable information—the type of regularly conducted activity envisioned by this exception.

Finally, the defendants "show[ed] that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(e). As noted above, the Report is silent as to the identity of the inmates who participated in the interview process or responded to the survey. A duty to report, furthermore, "has long been recognized as the principal means of establishing the reliability of a hearsay statement" offered under the Business Records Exception. *United States v Reyes*, 157 F.3d 949, 952 (2d Cir. 1998). The inmates were under no obligation to provide information to the Association employees, and thus their statements lack indicia of trustworthiness. Moreover, the Report does not describe the methodology that was used, the questions that were asked, or how many inmates were interviewed. The Report is silent as to whether any effort was made to verify the inmates' claims. To the contrary, in the Report the Association acknowledges that "[d]uring our visit we could not adequately investigate the amount and severity of the abuse or evaluate the factors that contribute to the problems between inmates and staff." Joint App'x at

10

79. We find that the defendants have carried their burden of showing that the information and circumstances surrounding the Report's creation indicate a lack of trustworthiness. In conclusion, the Report is hearsay that does not fall within the Business Records Exception, and the district court abused its discretion by admitting it into evidence.

### d. Public Records Exception

Abascal argues that the district court's decision to admit the Report can be affirmed on the alternative ground that the Report is a public record under Federal Rule of Evidence 803(8). We disagree. The district court initially admitted the Report under this exception, but ultimately relied upon the Business Records Exception after the defendants' motion for reconsideration called into question the district court's original finding that the Association is a public agency. The public records exception allows hearsay statements into evidence if the records or statements are made by a public office and the statements are made while under a legal duty to report. Fed. R. Evid. 803(8)(ii). The Report does not satisfy this exception. The Association is not a public agency. The Report, therefore, is not a record or statement from a public office. Fed. R. Evid. 803(8). The Association is under no legal duty to report on the conditions in New York State

prisons. Unpersuasive is Abascal's contention that, because the Association was originally created in 1846 by the New York Legislature for purposes of investigating and monitoring conditions in New York prisons, *see* 1846 N.Y. Laws Ch. 163 § 6, the Association currently functions as a state agency. Regardless of the Association's previous legal status, since 1929, when the Legislature created the State Commission on Corrections to inspect and report on the prison facilities, the Association has had no authority to inspect prisons. *See* 1929 N.Y. Laws Ch. 243 § 46. In 1973, the Legislature confirmed that such authority belongs exclusively to the State Commission on Corrections. *See* N.Y. CORRECT. Law § 41; Memorandum of State Exec. Dep't, 1973 N.Y. Sess. Laws at 2214 (McKinney). By the Association's own measure, it is an independent non-profit organization. *See Correctional Association of New York, "Who We Are,"* http://www.correctionalassociation.org/about-us/mission-history, (last visited February 29, 2016). Although it may work closely with state agencies, the Association itself is not one. The public records exception, therefore, cannot apply to the Report.

### e. Hearsay within Hearsay

In addition, the Report—hearsay itself—was inadmissible because it further contains hearsay in the form of statements from inmates complaining about abuse at Attica. Fed. R. Evid. 805. Abascal does not argue otherwise. Because the inmates' statements concerning abuse at Attica do not conform with any of the exceptions to the rule against hearsay, the district court exceeded the bounds of its discretion when it admitted the Report.

### f. Harmless Error

We turn to the question of whether the admission of the Report was harmless error. We hold that it was not. An error is harmless only if "the evidence was unimportant in relation to everything else the jury considered" and we "can conclude with fair assurance that the evidence did not substantially influence the jury." *Cameron*, 598 F.3d at 61 (internal quotation omitted). The following factors are relevant in determining whether an evidentiary ruling is harmless: (1) whether the evidence bore on the most important issues in the case; (2) whether the evidence was simply cumulative or corroborative; (3) whether the evidence was used in summation; and (4) whether the appellee's case was particularly strong *Id.* at 65–66. A party's substantial rights are affected only

where a jury's judgment was likely swayed by the error. *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 319 (2d Cir. 2004). The party challenging admission on appeal bears the burden of showing that the error was not harmless. *Id.*

The erroneous admission of the Report was not harmless because the jury was most likely influenced by the mistake. First, the Report bore on the most important factual issue in the case: whether Abascal's allegations of abuse were credible. Second, the Report was more corroborative than cumulative. *See Cameron*, 598 F.3d at 65. The Report stated that Attica had a pervasive problem with correction officers retaliating against inmates by depriving them of food. Abascal alleged and sought to prove that Fleckenstein and Kosmowski retaliated against him in this exact manner. The Report thus corroborated Abascal's narrative by supporting the proposition that correction officers commonly retaliate against inmates at Attica. Third, Abascal relied heavily upon the Report during his summation. He pointed to the Report to show that the defendants acted with malice and told the jury that the Report "tipped the scales" in his favor. Joint App'x at 426–27. Finally, Abascal's case was not particularly strong. Although Abascal introduced some documentary evidence that included

14

Abascal's formal grievances against the defendants and galley worksheets indicating he was not present for certain meals, his case centered predominantly on his own testimony and that of Soto, a fellow inmate at Attica. Soto testified that he heard Abascal's screams and noticed that he was missing from the cafeteria at mealtimes. The testimony at trial presented an obvious credibility contest between Abascal's witnesses and the correction officers. The jury's verdict itself is a clear indication of this tension: The jury rejected Abascal's claims that defendant Fleckenstein used excessive force against him. By awarding nominal compensatory damages, the jury also rejected Abascal's assertion that he was personally injured by missing meals. Considering that Abascal was awarded $150,000 in punitive damages, however, it is highly likely that the jury considered the Report's information pertaining to Attica's pervasive culture of abuse when calculating punitive damages. On this record we can only conclude that the error in admitting the Report was not harmless.

## IV.  CONCLUSION

We hereby VACATE the judgment and REMAND to the district court for further proceedings. Given our disposition, we refrain from addressing the defendants' remaining arguments.