*U.S. v. Jakes-Johnson*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of July, two thousand twenty-one.

PRESENT:
        SUSAN L. CARNEY,
        RICHARD J. SULLIVAN,
        JOSEPH F. BIANCO,
                *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

      *Appellee,*

        v.                            No. 20-2310

BENJAMIN JAKES-JOHNSON,

      *Defendant-Appellant.*

_____

| | |
|---|---|
| FOR APPELLANT: | ANDREA G. HIRSCH, Esq., New York, NY (Marc C. Kokosa, The Kokosa Law Firm, P.C., Latham, NY, *on the brief*). |
| FOR APPELLEE: | MICHAEL D. GADARIAN (Geoffrey J.L. Brown, *on the brief*), Assistant United States Attorneys, *for* Antoinette T. Bacon, Acting |

United States Attorney, Northern District of New York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on July 15, and signed on July 21, 2020, is **AFFIRMED**.

Benjamin Jakes-Johnson appeals from a judgment of conviction on counts of distribution of child pornography, *see* 18 U.S.C. § 2252A(a)(2)(A), (b)(1), attempted receipt of child pornography, *see id.*, and possession of child pornography, *see id.* § 2252A(a)(5)(B), (b)(2), entered following his March 2020 jury trial. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.    Limitation of Expert Testimony

At trial, Jakes-Johnson asserted an insanity defense. In support of the defense, he called expert witness Dr. Eric Goldsmith, a forensic psychiatrist, to testify that Jakes-Johnson suffered from "Complex PTSD" (post-traumatic stress disorder) arising from a devastating childhood in which Jakes-Johnson was subjected to continuing and severe sexual abuse. Gov't App'x 138. Dr. Goldsmith told the jury that Jakes-Johnson "downloaded[] [and] traded child pornography" during a "period[] of time . . . that he was suffering with a return of . . . dissociative, severe posttraumatic symptoms." *Id.* at 139. In Dr. Goldsmith's opinion, Jakes-Johnson viewed child pornography to "help[] diminish the overwhelming, distressing posttraumatic symptoms and that dissociative state that he[] [was] in." *Id.* at 140.

After eliciting substantial testimony about the relationship between Jakes-Johnson's described PTSD and his offense conduct, defense counsel sought to ask Dr. Goldsmith the following question: "And a person suffering from Posttraumatic Stress Disorder, can that, in your opinion to a reasonable degree of psychiatric certainty, can that affect an individual's ability to appreciate that his conduct is wrong?" App'x 240. The district court precluded Dr.

2

Goldsmith from answering this question, citing limits on expert testimony imposed by Federal Rule of Evidence 704(b). Jakes-Johnson challenges that ruling on appeal, contending that the question was both permissible and critical to establishing his defense.

We review a district court's decision to exclude expert testimony for abuse of discretion. *See United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004).[1] When evidence is improperly excluded at trial, this Court will nonetheless uphold the verdict if it is "highly probable that the error did not affect the verdict"—that is, if we can conclude that the error was harmless. *United States v. Stewart*, 907 F.3d 677, 688 (2d Cir. 2018).

Rule 704(b) provides:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

This rule has particular relevance when a defendant asserts an insanity defense, the availability of which is codified at 18 U.S.C. § 17(a):

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts.

Jakes-Johnson contends that his counsel should have been permitted to ask the precise question whether PTSD "can . . . affect an individual's ability to appreciate that his conduct is wrong." App'x 240. He notes that other circuits have generally approved hypotheticals drawn in this way, in which counsel asks whether the defendant's purported mental illness *could* affect a *hypothetical person's* ability to appreciate the wrongfulness of his conduct. *See United States v. Dixon*, 185 F.3d 393, 401-02 (5th Cir. 1999); *United States v. Brown*, 32 F.3d 236, 239 (7th Cir. 1994); *United States v. Kristiansen*, 901 F.2d 1463, 1466 (8th Cir. 1990).

---

[1] Unless otherwise noted, in quoting caselaw, this Order omits all alterations, citations, footnotes, and internal quotation marks.

The Government does not respond to the caselaw cited by Jakes-Johnson. Instead, it argues that the question was properly excluded, pointing to an Eleventh Circuit decision, *United States v. Manley*, 893 F.2d 1221 (11th Cir. 1990), which rejected questions that the Government describes as "almost identically worded." Appellee's Br. 71. Yet, contrary to the Government's argument, the question precluded in *Manley* tracked the defendant's specific qualities more closely than did the question at issue here. *See* 893 F.2d at 1224. As a result, the *Manley* formulation more clearly appeared to be asking the expert impermissibly to opine on the ultimate issue: whether the defendant *himself* appreciated the wrongfulness of his act.

In light of this caselaw, we conclude that the district court abused its discretion in prohibiting defense counsel's question. The error by the district court in this regard was harmless, however, for two distinct reasons. First, the district court allowed Dr. Goldsmith to testify at length—and in substantial detail—about Jakes-Johnson's Complex PTSD. Dr. Goldsmith testified that Jakes-Johnson's history of childhood sexual abuse caused him to suffer from PTSD, and that PTSD caused Jakes-Johnson to turn to viewing child pornography during dissociative states. He testified that Jakes-Johnson engaged in the charged criminal conduct while suffering from dissociative symptoms, and that Jakes-Johnson downloaded and traded child pornography as a way of dealing with his PTSD. Dr. Goldsmith further testified in response to a series of hypotheticals that Jakes-Johnson's specific offense conduct was consistent with a person suffering from PTSD, including with the onset of dissociative symptoms. Given this extensive testimony, we can conclude with confidence that the single precluded question did not meaningfully affect the jury's verdict. *See Stewart*, 907 F.3d at 688.

Second, the trial record contains overwhelming evidence supporting an inference that Jakes-Johnson appreciated the wrongfulness of his conduct, tending to negate the insanity defense he interposed. When arrested for the instant offenses, Jakes-Johnson was on supervised release for a prior child pornography conviction: since he was punished for the same behavior earlier, a jury might reasonably conclude that he was aware that his behavior was considered wrong. In addition, a State Police Investigator testified that Jakes-Johnson went to substantial lengths to avoid detection for the currently charged crimes, including by

4

downloading child pornography at hotels to avoid being tracked, and by checking messages on a child pornography website at a rental apartment that he failed to disclose to the Probation Department as a place he was regularly staying. The Government also presented substantial evidence calling into question Dr. Goldsmith's testimony that Jakes-Johnson viewed child pornography to relieve his PTSD symptoms when he could not meet up with men. For instance, the state investigator testified that Jakes-Johnson said after his arrest that he frequently viewed child pornography as part of sexual encounters with other men. Moreover, a cooperating witness testified and produced messages corroborating that Jakes-Johnson met up with him with the intention of viewing child pornography together and, in later messages, expressed satisfaction with their shared viewing of child pornography.

This evidence provided an ample basis for the well-instructed jury to reject Jakes-Johnson's insanity defense. It assures us that the limit the district court placed on Dr. Goldsmith's testimony, while erroneous, "did not affect the verdict." *Stewart*, 907 F.3d at 688; *see also United States v. Blume*, 967 F.2d 45, 53 (2d Cir. 1992) (Newman, *J.*, concurring) (explaining that error in omitting insanity defense instruction to jury was harmless in part because defendant's insanity defense "based on a claim that the defendant suffered from post traumatic stress disorder . . . was insubstantial"). We conclude that the error in the district court's limitation of Dr. Goldsmith's expert testimony was harmless.

## II.    Speedy Trial Claim

Jakes-Johnson also argues on appeal that the nearly three-year delay between his arrest and trial violated his Sixth Amendment right to a speedy trial. In evaluating a Sixth Amendment speedy trial claim, courts apply the balancing test outlined in the Supreme Court's *Barker v. Wingo* decision, "in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. 514, 530 (1972). In applying this test, we consider four factors: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right in the run-up to the trial; and (4) whether the defendant was prejudiced by the failure to bring the case to trial more quickly." *United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012). Because Jakes-Johnson did not raise a speedy trial claim in the district court, on

appeal we review the claim under a plain error standard. *See United States v. Abad*, 514 F.3d 271, 274 (2d Cir. 2008).[2]

Applying the *Barker* factors here, we conclude that Jakes-Johnson's constitutional right to a Speedy Trial was not violated. The duration of Jakes-Johnson's pre-trial incarceration was under three years, and a substantial portion of that time is fairly attributed to Jakes-Johnson and his trial counsel's requested delays. Moreover, defense counsel consented to the adjournments of the case and did not assert the speedy trial right in a meaningful way. *See Abad*, 514 F.3d at 275. Finally, Jake-Johnson's speedy trial claim fails because he cannot establish prejudice arising from the pre-trial delay. "The Supreme Court has consistently emphasized three interests of a defendant that may be prejudiced by trial delay: [1] oppressive pretrial incarceration, [2] anxiety and concern of the accused, and [3] the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *United States v. Ghailani*, 733 F.3d 29, 50 (2d Cir. 2013). While lengthy, this period of incarceration is not in itself "oppressive" under our caselaw. *Cf. United States v. Moreno*, 789 F.3d 72, 81-82 & n.10 (2d Cir. 2015). Nor is this case "one of those exceedingly rare instances in which the length of the delay alone supports a showing of prejudice." *Id.* at 82. And while Jakes-Johnson cites evidence from the Government's expert witness that his pre-trial incarceration made him suicidal, that same expert testified that he believed Jakes-Johnson was exaggerating his symptoms and might be malingering. Finally, Jakes-Johnson fails to persuasively argue that his defense was substantially impaired as a result of the delay. While "proof of particularized prejudice is not essential to every speedy trial claim," *Doggett v. United States*, 505 U.S. 647, 655 (1992), here, the other *Barker* factors do not weigh

---

[2] Jakes-Johnson argues that his constitutional speedy trial claim is subject to *de novo* review. We need not resolve the parties' dispute over the appropriate standard of review, however, because it is not dispositive here: Jakes-Johnson's constitutional speedy trial claim would fail for the same reasons on *de novo* review.

sufficiently in Jakes-Johnson's favor to overcome the absence of a prejudice showing in this case. Accordingly, Jakes-Johnson's Sixth Amendment speedy trial claim fails.[3]

## III.    Testimony Regarding Prior Sexual Contact

Jakes-Johnson argues that the district court wrongly permitted FBI Special Agent Fallon to testify that Jakes-Johnson admitted, in a 2005 interview related to his previous arrest and conviction, that he had sexual contact with a 9-year-old boy and other boys when he was 11, and with a 16-year-old when he was 19. This Court reviews for abuse of discretion the district court's decision to admit this testimony over Jakes-Johnson's objection. *See United States v. Quinones*, 511 F.3d 289, 307-08 (2d Cir. 2007). "When reviewing a district court's decision to admit evidence, either an error of law or a clear error of fact may constitute an abuse of discretion." *Abascal v. Fleckenstein*, 820 F.3d 561, 564 (2d Cir. 2016). However, "[e]ven when a district court's evidentiary ruling is erroneous, we will not grant a new trial if the error was harmless." *Id.*

The government does not dispute that evidence of Jakes-Johnson's prior sexual contact with minors would ordinarily be inadmissible under Federal Rule of Evidence 404(b)(1). Rather, the government argues that the district court properly allowed Special Agent Fallon's testimony because Jakes-Johnson's counsel "opened the door" to such testimony through his opening statement.

Even assuming the district court erred by admitting Special Agent Fallon's testimony, however, we conclude that the error was harmless since, during cross-examination, Jakes-Johnson's counsel was able to elicit that Jakes-Johnson denied ever having sexual contact with a minor *when he was an adult*. The government's affirmative case against Jakes-Johnson was also extraordinarily strong, including (1) video of a real-time chat between an undercover FBI agent and a user whose online account was linked to Jakes-Johnson,

---

[3] To the extent Jakes-Johnson also raises a claim for the violation of his rights under the Speedy Trial Act, that separate claim is waived because it was never raised in the district court. *See United States v. Holley*, 813 F.3d 117, 121 (2d Cir. 2016) ("Under [18 U.S.C. § 3162(a)(2)], if the defendant fails to move for dismissal on STA grounds in the district court, this Court cannot review any such claim on appeal, even for plain error.").

(2) evidence tying the IP address used to download and share child pornography to Jakes-Johnson's apartment that he hid from the Probation Office, and (3) a thumb drive recovered from that apartment containing the child pornography shared with the undercover FBI agent. Moreover, as noted *supra*, there was substantial evidence in the trial record that undermined Jakes-Johnson's insanity defense. In light of this overwhelming evidence of Jakes-Johnson's guilt, we cannot say that Special Agent Fallon's brief testimony regarding Jakes-Johnson's prior sexual contact substantially influenced the jury's verdict. *See, e.g.*, *United States v. McCallum*, 584 F.3d 471, 478 (2d Cir. 2009) ("We have repeatedly held that the strength of the government's case is the most critical factor in assessing whether error was harmless.").

## IV.    Testimony of Todd Grant

Finally, Jakes-Johnson challenges the district court's decision to permit Investigator Grant at trial to refer to Jakes-Johnson as a "pedophile" and to suggest that Jakes-Johnson belonged to internet groups associated with "baby child pornography." Because Jakes-Johnson did not object to this testimony when it was presented, we review for plain error. *See United States v. Litwok*, 678 F.3d 208, 215 n.2 (2d Cir. 2012).

Contrary to Jakes-Johnson's argument, we read Investigator Grant's repeated uses of the word "pedophile" in his testimony as generally not in reference to Jakes-Johnson. *See, e.g.*, App'x 225. At most, Grant obliquely implied in two instances that Jakes-Johnson was a pedophile by using the phrase "other pedophiles" while discussing efforts to arrest persons committing child pornography offenses. *See, e.g.*, App'x 228. Moreover, Investigator Grant readily conceded on cross-examination that he was "not qualified to tell this jury whether or not [Jakes-Johnson's] conduct [was] pedophilia." App'x 233. In light of the record as a whole, then, we cannot conclude that allowing Investigator Grant to use the word "pedophiles" in the course of his testimony was a "clear or obvious" error that "affected [Jakes-Johnson's] substantial rights." *United States v. Marcus*, 560 U.S. 258, 262 (2010).

We reach the same conclusion with respect to Grant's testimony that Jakes-Johnson belonged to internet groups involved with "baby child pornography." On appeal, Jakes-

8

Johnson points to no evidence clearly demonstrating that this testimony was inaccurate, let alone evidence sufficient to support the conclusion that allowing the testimony constituted plain error.

\* \* \*

We have considered Jakes-Johnson's remaining arguments on appeal and find in them no basis for reversal. Accordingly, the judgment of the district court is **AFFIRMED**. Jakes-Johnson's motion to supplement the record on appeal is **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court