24-2423-cr
*United States v. Whyte*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of February, two thousand twenty-six.

PRESENT:
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                                          24-2423-cr

AMY SARCIA, ROYSHAWN ALLGOOD, AKA BOY ROY, HOLLY BUTLER, KEMAR CAMERON, NIREN DAVIS, AKA KING, EARLENE DUDLEY, JR., AKA BIG FISH, JR., VICTOR ENCARNACION, JOSHUA FELDMAN, ANTOINE FORBES, AKA CREAM, RAMEL GENERAL, AKA RA, BENJAMIN GREGOR, JUAN HERNANDEZ, RONALD KETTER, ORLAYN MARQUEZ, AKA CUBA, BRYON MCCLELLAN, AKA BRIAN MCCLELLAN, AGGRAY MCLEOD, AKA JAMAICAN BERRY, PRINCETAFARI VIDAL, AKA PRINCE, EMILIO RODRIGUEZ, AKA MILLZ, JEREMY

SANBORN, AKA JERM, DILMA SOLANGE
SILVA, RAYQUAN STOKELY, AKA
GATZ, AKA RAYQUAN STOKLEY, SASHA
SWAIN, GEOFFREY GORDON, ROBERT
WINSTON, AKA BOBBO, JACKIE
HERNANDEZ,

     *Defendants*,

ANTHONY WHYTE, AKA JAK MAC,

     *Defendant-Appellant*.

FOR APPELLEE:      NATASHA M. FREISMUTH (Sandra S. Glover, *on the brief*), Assistant United States Attorneys, *for* Marc. H. Silverman, Acting United States Attorney for the District of Connecticut, New Haven, Connecticut.

FOR DEFENDANT-APPELLANT:  JUSTIN C. PUGH, Justin C. Pugh & Associates, Westport, Connecticut.

Appeal from a judgment of the United States District Court for the District of Connecticut (Victor A. Bolden, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on September 6, 2024, is **AFFIRMED**.

Defendant-Appellant Anthony Whyte appeals from a judgment of conviction entered by the district court, following a jury trial at which Whyte was found guilty of: (1) conspiracy to distribute, and to possess with intent to distribute heroin, fentanyl, and cocaine (Count One); (2) possession with intent to distribute and distribution of heroin (Counts Two and Three); (3) possession with intent to distribute 500 grams or more of cocaine, 100 grams or more of heroin, and 40 grams or more of fentanyl (Count Eight); (4) possession of firearms in furtherance of a drug trafficking crime (Count Nine); and (5) conspiracy to launder monetary instruments (Count Thirteen). On appeal, Whyte argues that his rights to a speedy trial under the Speedy Trial Act

2

("STA") and the Sixth Amendment were violated, and that the evidence at trial was insufficient to convict him of Counts Eight, Nine, and Thirteen. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.      Speedy Trial Challenges

### a.      The Speedy Trial Act

Under the STA, a federal criminal trial shall commence by the latest of seventy days "after a defendant who has pled not guilty is charged, the charging document is unsealed, or the defendant makes an initial appearance." *United States v. Pikus*, 39 F.4th 39, 52 (2d Cir. 2022) (citing 18 U.S.C. § 3161(c)(1)). Certain periods of delay are excluded from the seventy-day calculation, however. For example, the district court may exclude a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). Moreover, under 18 U.S.C. § 3161(h)(7),

> the district court may exclude any delay resulting from a continuance granted *sua sponte* or on a motion of the parties, provided that "the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

*Pikus*, 39 F.4th at 52 (quoting 18 U.S.C. § 3161(h)(7)(A)). When the district court orders such an "ends-of-justice continuance, it must set forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice are served and they outweigh other interests." *Id.* (internal quotation marks omitted) (quoting *Zedner v. United States*, 547 U.S. 489, 506 (2006)). The court "shall consider" a list of non-exhaustive factors in making this ends-of-justice determination, including whether a case is "so unusual or so complex, due to the number of defendants [or] the nature of the prosecution . . . that it is unreasonable to expect adequate

3

preparation . . . within the time limits" established by the STA, and whether a failure to exclude time "would deny counsel for the defendant . . . reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(ii), (iv).  In a multi-defendant case, there is "a single speedy trial clock, which begins to run with the clock of the most recently added defendant," and "delay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants." *United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986).  If a defendant properly preserves a STA challenge, we review the district court's findings of fact for clear error and its application of the STA to those facts *de novo*.  *Pikus*, 39 F.4th at 53.

Here, as a threshold matter, the government argues that Whyte has waived any STA claim on appeal because his pretrial motion to dismiss the indictment on speedy trial grounds was based on the Sixth Amendment, not the STA.  We note that, although Whyte's motion was styled as a motion under the Sixth Amendment, it does briefly reference the STA.  In any event, we need not address this issue because, even assuming *arguendo* that Whyte properly preserved his STA claim for our review, we conclude that the district court properly excluded time from Whyte's STA clock, such that he was brought to trial in under seventy days and his right under the STA was not violated.

At Whyte's arraignment on March 13, 2019, the assigned magistrate judge set the date of jury selection for April 16, 2019.  Whyte's STA clock then ran for thirty-three days between March 14, 2019[1] and April 16, 2019 because, as the government concedes, the period between Whyte's

---

[1]  The parties disagree about when Whyte's STA clock started.  According to the government, it started on June 4, 2019—the date the last defendant was arraigned on the original indictment—or August 30, 2019—the date the last new defendant was arraigned on the superseding indictment.  Whyte says his STA clock began on March 13, 2019, the date of his arraignment.  Because the outcome of this appeal is the same using any of these dates, we will assume *arguendo* that Whyte's STA clock started on March 14, 2019.  *See United States v. Nixon*, 779 F.2d 126, 130 (2d Cir. 1985) (holding that the date after the triggering event is the first day to be counted).

arraignment and the initial April 2019 jury selection date is not expressly excluded by any order of the district court. The district court subsequently continued jury selection multiple times (and excluded STA time on each occasion), until it ultimately began on September 8, 2021. According to Whyte, however, the district court improperly excluded the following time periods from the STA clock: (1) April 16, 2019 to October 15, 2019; (2) October 15, 2019 to May 19, 2020; (3) May 19, 2020 to June 16, 2020; (4) April 5, 2021 to May 3, 2021; (5) May 3, 2021 to June 2, 2021; and (6) June 2, 2021 to September 8, 2021. We disagree.

**April 16, 2019 to October 15, 2019.** As to the first time period, on March 13, 2019, one of Whyte's co-defendants filed a motion to continue jury selection from April 16, 2019 to October 2019, and filed a speedy trial waiver explaining that he sought the continuance to afford his attorney adequate time to prepare for trial. In the absence of any objection, on March 14, 2019, the district court (Vanessa J. Bryant, *Judge*)[2] continued trial to October 15, 2019, and excluded STA time until that date. In doing so, the district court explicitly found that "the interests of justice served by continuing jury selection to 10/15/2019 outweigh the interests of the public and the Defendant in a speedy trial, because the failure to grant a continuance would deny counsel 'reasonable time necessary for effective preparation, taking into account the exercise of due diligence.'" Order, *United States v. Whyte*, No. 19-cr-64, Dkt. No. 172 (D. Conn. March 14, 2019) (quoting 18 U.S.C. § 3161(h)(7)(B)(iv)). The district court's factual finding that a six-month continuance was necessary to give counsel for a co-defendant time to prepare in a complex multi-defendant case[3] involving voluminous discovery was not clearly erroneous and the district court complied with the

[2] Whyte's case was originally assigned to Judge Byrant but was reassigned to Judge Bolden on April 22, 2020.

[3] At the time the district court excluded this time period, twenty-four defendants were indicted. That number ultimately grew to twenty-six total defendants.

5

STA by setting forth on the record "its reasons for finding that the ends of justice are served and they outweigh other interests." *Zedner*, 547 U.S. at 506 (internal quotation marks and citation omitted).

Whyte complains that the district court "failed to enumerate the rationale behind its findings," or, in other words, "it made a record of the *what* but not the *why*." Appellant's Br. at 27 (emphasis in original). However, the district court clearly made a record both as to the *what*—that the ends of justice would be served by a continuance—and the *why*—the need to give counsel reasonable time necessary for effective preparation. That is sufficient to comply with the STA. *See United States v. Hoskins*, 44 F.4th 140, 152 (2d Cir. 2022) ("[T]ime may be properly excluded pursuant to an ends-of-justice finding . . . where it is clear that the court considered the underlying factors and concerns.").[4]

**October 15, 2019 to May 19, 2020.** The second contested time period was also properly excluded from Whyte's STA clock. Upon the request of Whyte's co-defendants, on September 26, 2019, the district court continued jury selection and excluded STA time until May 19, 2020. It then articulated the basis for the exclusion in an October 16, 2019 order. Because the basis for the continuance and exclusion was the request of a co-defendant, the district court considered whether the delay was "reasonable" as to Whyte under 18 U.S.C. § 3161(h)(6). After weighing the procedural history of the case, the presumption of joint trials, and Whyte's interest in a speedy trial, the district court concluded that such a delay was reasonable because it resulted from Whyte's co-defendants' ensuring that they would be ready for trial, and from the government's good faith

---

[4] We are similarly unpersuaded by Whyte's reliance on *United States v. Pikus*, 39 F.4th 39 (2d Cir. 2022). There, "the district court [often] perfunctorily excluded time without explanation" and, at other times, recited "brief, retrospective statements" that "referred back to the original designation of [the] case as complex." *Id.* at 53–54. Here, by contrast, the district court entered its case-specific findings as to why the ends of justice were served by the continuance and exclusion of STA time.

decision to add new defendants in a superseding indictment. We discern no clear error in the district court's findings that Whyte's co-defendants needed additional time to prepare for trial or that the government's charging decisions were made in good faith, and, on *de novo* review, we agree that this delay was reasonable under § 3161(h)(6).

Whyte takes issue with the fact that the district court first ordered the exclusion of STA time, and then issued an opinion explaining the reasoning for the order approximately three weeks later. Although we "prefer contemporaneous findings on the record," the district court's delay in providing the reasoning for its contemporaneous exclusion was permissible. *See Hoskins*, 44 F. 4th at 154 (alteration adopted) (internal quotation marks and citation omitted); *see also Zedner*, 547 U.S. at 507 ("[A]t the very least the [STA] implies that [the] findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2).").[5]

**May 19, 2020 to June 16, 2020 and April 5, 2021 to May 3, 2021.** The next two contested periods of time were also properly excluded from Whyte's STA clock. Throughout the entirety of both periods, jury trials were suspended in the District of Connecticut because of the public health risks and logistical problems associated with holding a jury trial during the COVID-19 pandemic. *See* General Order, *In re: Court Operations Under the Exigent Circumstances Created by COVID-19* (March 24, 2020) (available at https://perma.cc/RJ5B-F9RC).[6] That order (and all subsequent orders extending the moratorium) contained an explicit finding that the ends of justice served by

---

[5] As with the first excluded time period, Whyte also argues that the district court did not sufficiently explain why it credited the government's explanations for its decision to add a new defendant in a superseding indictment and discovery delays. However, the district court was not required to independently verify the government's representations and was entitled to rely on them—particularly given the absence of any allegation of bad faith.

[6] After this initial order, then-Chief Judge Underhill issued a series of orders extending the jury trial moratorium. The last order was filed on January 19, 2021, which continued all jury trials until May 3, 2021. *See* General Order, *In re: Court Operations Under the Exigent Circumstances Created by COVID-19* (Jan. 19, 2021) (available at https://perma.cc/Q9PJ-V6WJ).

continuing all jury trials outweighed the best interest of the public and each defendant in a speedy trial under the STA, given the circumstances imposed by the COVID-19 pandemic. *Id.* We discern no error in that conclusion and, accordingly, all time between March 24, 2020 and May 3, 2021 was properly excluded from Whyte's STA clock.

**May 3, 2021 to June 2, 2021 and June 2, 2021 to September 8, 2021.** The remaining two continuances and exclusions were entered in orders on April 30, 2021 and May 12, 2021 respectively. Even assuming *arguendo* that Whyte's March 18, 2021 motion to dismiss the indictment on speedy trial grounds preserved his current challenge to these later periods,[7] we conclude that the orders excluding these periods complied with the STA. In both orders, the district court found, on the record, that the ends of justice were served by continuing the start of trial because of: (1) the complexity of the case; (2) the expected length of the trial; and (3) the logistical challenges of resuming trials (including this multi-defendant trial) consistent with the relevant COVID-19 safety protocols. We discern no error—clear or otherwise—in these findings and conclusions.

In short, we conclude that all of the time periods that Whyte challenges were properly excluded from his STA clock. Thus, because jury selection started within seventy days of his STA clock starting (taking into account the exclusions of time), Whyte's speedy trial rights under the

---

[7] Other circuits have held that "a motion for dismissal [under the Speedy Trial Act] is effective only for periods of time which antedate [its] filing." *United States v. Connor*, 926 F.2d 81, 84 (1st Cir. 1991); *United States v. Sherer*, 770 F.3d 407, 411 (6th Cir. 2014) (same); *United States v. Wirsing*, 867 F.2d 1227, 1230 (9th Cir. 1989) ("[A] court need only consider alleged delay which occurs prior to and including the date on which the motion is made. The right to challenge any subsequent delay is waived absent the bringing of a new motion to dismiss."). Here, although Whyte's motion was filed on March 18, 2021, the district court did not deny it until September 1, 2021, and the Ninth Circuit has held—at least in the context of a defendant proceeding *pro se*—that a motion to dismiss on the basis of the STA is "continuing until it is denied, thus preserving an objection to the delay until that time." *United States v. Hall*, 181 F.3d 1057, 1061 (9th Cir. 1999). We need not resolve this issue because Whyte's challenge fails even if it is properly preserved for our review.

STA were not violated.

### b. The Sixth Amendment

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Four factors are relevant to a Sixth Amendment speedy trial claim: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). We review a district court's weighing of the *Barker* factors for abuse of discretion, *see United States v. Bert*, 814 F.3d 70, 87 (2d Cir. 2016), and review a district court's findings of fact for clear error. *United States v. Moreno*, 789 F.3d 72, 78 (2d Cir. 2015).

As an initial matter, the thirty-one month delay here between indictment and trial[8] is sufficient to trigger constitutional concern, *see Barker*, 407 U.S. at 530, but given the context of this complex, multi-defendant narcotics case, we consider this factor largely neutral, and inconclusive on its own to establish a Sixth Amendment violation, *see id.* at 531 (explaining that "delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge"); *Hoskins*, 44 F.4th at 154 (affirming denial of Sixth Amendment claim despite six-year delay between indictment and trial).

The second *Barker* factor—the reason for the delay—is "often critical." *Moreno*, 789 F.3d at 79. Under this factor, "deliberate attempts to delay trial" are weighed "most heavily against the government," "valid reasons for delay . . . are taken off the scale entirely," and "negligence or overcrowded dockets are weighted somewhere in the middle" because "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *United States v. Tigano*, 880 F.3d 602, 612–13 (2d Cir. 2018) (internal quotation marks and citation

---

[8] "[T]he relevant interval for [a defendant's] Sixth Amendment speedy trial claim is from the first indictment or arrest to trial." *United States v. Black*, 918 F.3d 243, 259 (2d Cir. 2019) (emphasis omitted).

omitted). Here, any delay between the onset of the COVID-19 pandemic in March 2020 and Whyte's trial in September 2021 was attributable to a neutral or valid reason for the delay. *See, e.g., United States v. Zhukov*, No. 21-2981, 2023 WL 3083284, at \*2 (2d Cir. Apr. 26, 2023) (summary order) (concluding the district court did not abuse its discretion where it concluded that a delay due in part to the COVID-19 pandemic was a neutral or valid reason for the delay and did not warrant dismissal on Sixth Amendment speedy trial grounds); *accord United States v. Pharmes*, No. 22-221, 2023 WL 6055952, at \*3 (2d Cir. Sep. 18, 2023) (summary order). Moreover, Whyte concedes that the delay between June 16, 2020 and April 5, 2021 is properly attributed to him because of his requests for new counsel. *See* Appellant's Br. at 21. The reasons for the remaining twelve months of delay between March 2019 and March 2020 are largely neutral given the size and complexity of the case, the volume of discovery, and the need to provide the defendants and their lawyers time to prepare for trial. Overall, we consider the reasons for the delay largely neutral, and this factor does not weigh heavily in our analysis.

As the government concedes, Whyte frequently asserted his speedy trial rights before the district court, and therefore the third *Barker* factor weighs in his favor.

The final *Barker* factor—prejudice—must be assessed in the context of the interests the Sixth Amendment protects, namely, "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused;" and "most serious[ly]," "(iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. While "affirmative proof of particularized prejudice is not essential to every speedy trial claim," *Doggett v. United States*, 505 U.S. 647, 655 (1992), we "generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice," *United States v. Cain*, 671 F.3d 271, 297 (2d Cir. 2012) (internal quotation marks and citation omitted), and "we have generally required a showing of some

10

significant trial-related disadvantage in order to establish a [Sixth Amendment] speedy-trial violation," *id.* Here, although Whyte's pretrial detention—significant portions of which were during the COVID-19 pandemic—was no doubt a hardship, we cannot say he suffered prejudice sufficient to have this factor weigh in his favor because he has failed to allege prejudice in a particularized sense, and he has not shown that the pretrial delay here impaired his defense.

Weighing the *Barker* factors together, on this record, we conclude that the district court did not abuse its discretion when it determined that Whyte's Sixth Amendment right to a speedy trial was not violated. *See Hoskins*, 44 F.4th at 154 ("Ultimately, the district court's analysis of the *Barker* factors and dismissal of Hoskins's Sixth Amendment claim falls 'within the range of permissible decisions.'" (quoting *United States v. Ghailani*, 733 F.3d 29, 44 (2d Cir. 2013))).

## II. Sufficiency Challenges

Whyte also argues that the evidence at trial was insufficient to convict him of the following charges: Count Eight (possession of certain quantities of cocaine, heroin, and fentanyl, with intent to distribute, in violation of 18 U.S.C. § 841(a)(1), 841(b)(1)(B)(i), (ii), (iv), and 18 U.S.C. § 2); Count Nine (possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)), and Count Thirteen (conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h)).[9]

When considering a sufficiency challenge, "[w]e must uphold a jury verdict if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020) (emphasis in original) (quoting *Jackson v.*

---

[9] Whyte has forfeited any challenge to the sufficiency of the evidence as to his other counts of conviction. Although he purports to preserve such a challenge in a cursory footnote, *see* Appellant's Br. at 33 n.4, that is insufficient to present an issue for our review. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]." (internal quotation marks and citation omitted)).

*Virginia*, 443 U.S. 307, 319 (1979)). In assessing whether a defendant has met this "heavy burden," *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011), we view the evidence "in conjunction, not in isolation," *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2008) (quoting *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008)), and in the light most favorable to the government, *United States v. Temple*, 447 F.3d 130, 136–37 (2d Cir. 2006), because "the task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court," *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001). We review preserved claims of insufficiency of the evidence *de novo*. *See Atilla*, 966 F.3d at 128.

### a. Counts Eight and Nine

Counts Eight and Nine charged Whyte with possessing narcotics and firearms found in a safe in Unit 10—an apartment in the same building that Whyte lived in, and which the government contends was Whyte's "stash" apartment. Whyte argues that the evidence at trial was insufficient to prove that he constructively possessed the narcotics and firearms found in Unit 10 or that any such possession of firearms was in furtherance of a drug trafficking crime.

With respect to constructive possession, it "exists when a person has the power and intention to exercise dominion and control over the contraband in question and may be shown by direct or circumstantial evidence." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021) (internal quotation marks and citation omitted). Here, the evidence—viewed in the light most favorable to the government—showed, *inter alia*, that: (1) Whyte distributed narcotics from the apartment complex; (2) Whyte possessed a key to Unit 10; (3) Whyte discussed moving a large safe into the apartment complex (which was not present in Unit 10 when the prior tenant moved out); (4) Whyte provided instructions to a co-conspirator about how to open a safe with a combination lock; (5) the safe in Unit 10 had a combination lock; (6) ammunition recovered from Whyte's home and

distribution apartments (which were in the same apartment building as the "stash" apartment) could have been fired by one of the firearms found in the safe; and (7) law enforcement found heat sealer bags in Whyte's home and distribution apartments, but the only heat sealer found in the three apartments was found in Unit 10. This is sufficient evidence for a rational jury to have concluded that Whyte constructively possessed the narcotics and firearms found in the safe in Unit 10.[10]

As to the "in furtherance of" requirement, *see United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006), the government "must show a specific nexus between the charged firearm and the charged drug selling operation," which ultimately hinges on the "fact-intensive inquiry well-suited to resolution by a jury" of "whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking, including protection of the drugs, proceeds, or traffickers," *United States v. Lewis*, 62 F.4th 733, 746 (2d Cir. 2023) (internal quotation marks and citations omitted). Here, the firearms—some of which were loaded or stolen—were found in the same safe as the drugs and in the same "stash" apartment as drug packing materials including a heat sealer and a cutting agent. Construing these facts in the light most favorable to the government, a rational jury could have found that Whyte possessed the firearms in furtherance of a drug trafficking crime by using them to protect the drugs and himself when accessing the drugs. *See Willis*, 14 F.4th at 184–85 (concluding that a loaded gun found alongside "the combination of drugs and tools of the drug trade" supports an "in furtherance" finding); *Snow*, 462 F.3d at 63 ("From the [close physical] proximity between the handguns, proceeds, trace amounts of drugs, and drug paraphernalia, a reasonable juror could conclude that the person to be protected

---

[10] We are unpersuaded by Whyte's arguments that no witnesses or forensic evidence tied him to Unit 10 because "the sufficiency-of-the-evidence test may be satisfied by circumstantial evidence alone." *United States v. Zhong*, 26 F.4th 536, 559–60 (2d Cir. 2022) (internal quotation marks and citation omitted). In addition, to the extent Whyte argues that other people had access to Unit 10, possession "need not be exclusive" and the government "was not required to prove that the contraband was not subject to the control of others." *See Willis*, 14 F.4th at 182.

was a drug dealer and drug packaging paraphernalia, and the proceeds of drug trafficking were among the things being protected." (internal quotation marks and citation omitted)).[11]

     **b.     Count Thirteen**

Finally, Whyte argues that the evidence at trial was insufficient to support his conviction on Count Thirteen for conspiring to launder monetary instruments.

"Conspiring to launder money requires that two or more people agree to violate the federal money laundering statute, and that the defendant knowingly engaged in the conspiracy with the specific intent to commit the offenses that [are] the objects of the conspiracy." *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (alteration in original) (internal quotation marks and citation omitted). Here, the objects of the conspiracy were "promotion" or "concealment" money laundering, in violation of 18 U.S.C. § 1956(a). For those objectives, the government was required to prove that Whyte,

> (1) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (2) conducted or attempted to conduct a financial transaction (3) which in fact involved the proceeds of that unlawful activity, (4) either (a) with the intent to promote the carrying on of that unlawful activity or (b) with the knowledge that the transaction was designed at least in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity.

*United States v. Gotti*, 459 F.3d 296, 334 (2d Cir. 2006). The link between the money and unlawful activities "can be made through circumstantial evidence." *Id.* at 337.

Here, the government's money laundering evidence centered around two categories of

---

[11] We are also unpersuaded by Whyte's reliance on *United States v. Rosario*, 792 F. App'x 76 (2d Cir 2019) (summary order). There, the evidence established "at most" that the defendant "possessed the gun during the time that he was engaged in a drug-trafficking conspiracy," that on one particular day, he stored the gun "in a locked van parked near his home," that "the same van had also been parked . . . near the site of his drug-trafficking activity more than a month before," and that "his reason for possessing the gun was for protection." *Id.* at 78–79. However, here, like in *Willis*, the firearms were found stored with Whyte's narcotics and other drug paraphernalia. *See* 14 F.4th at 184–85.

payments: Whyte's paychecks from a pizzeria managed by his co-conspirator Amy Sarcia and Whyte's payment of rent to Sarcia. Whyte argues that the evidence was insufficient to show he knew that his rent payments and his paychecks from the pizzeria involved the proceeds of an unlawful activity, that he intended to promote the narcotics scheme using his rent payments or paychecks, or that the rent payments or paychecks were designed to conceal the funds in question. We disagree.

A rational jury could have concluded that Whyte and Sarcia knew that his rent payments and paychecks represented the proceeds of illegal narcotics trafficking because Whyte dealt drugs and had no other legitimate income, yet he paid Sarcia—with whom he had an intimate relationship—significant sums of money for access to three apartments, including the stash apartment. Next, there was sufficient evidence for the jury to reasonably conclude that Whyte's rent payments promoted the narcotics scheme because it provided a place to store and sell the narcotics. Finally, a rational jury could have also found that Whyte's paychecks from the pizzeria were not in return for actual work, but were rather designed to conceal the true source of that money—narcotics dealing—given that Sarcia and Whyte met in-person to exchange his paychecks for cash and Sarcia falsely told other employees—including the pizzeria's bookkeeper—that Whyte was a "line cook" for the restaurant.[12]

In sum, the evidence was sufficient for a rational jury to conclude that Whyte was guilty of Counts Eight, Nine, and Thirteen.

---

[12] Although Whyte urges us to adopt the inference that his paychecks from the pizzeria were compensation for promoting "Reggae Nights" at the pizzeria, the government presented evidence that this explanation was false, and "the task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court." *McDermott*, 245 F.3d at 137.

\*          \*          \*

We have considered Whyte's remaining arguments and conclude that they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court